715 So.2d 623 (1998)
STATE of Louisiana in the Interest of D.L.
No. 30878-JAC.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*624 Joseph William Bailey, Logansport, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Don M. Burkett, District Attorney, Richard Z. Johnson, Jr., Assistant District Attorney, for Plaintiff-Appellee.
Before MARVIN, C.J., and NORRIS and WILLIAMS, JJ.
*625 NORRIS, Judge.
DL, a minor, was charged with delinquency on one count of armed robbery in contravention of La. R.S. 14:64. After a hearing on the merits, DL was adjudicated delinquent and placed in the custody of the Department of Public Safety and Corrections until his 21st birthday. DL appeals, contending insufficient evidence to show that he committed armed robbery and excessive sentence. For the following reasons, we affirm.

I.
On March 12, 1997, at approximately 8:30 p.m., Mitchell Lewis, an assistant manager at Big Star in DeSoto Parish, went to a local bank to deposit the store's gross receipts. While attempting to place over $30, 000[1] into the night deposit box, Lewis was robbed at gunpoint by several assailants. One of the perpetrators, wearing a hooded sports jacket and later identified as DL, held a gun on Lewis and ordered Lewis to leave the scene while he and another perpetrator absconded with the money. Lewis then fled the scene. Alvin Wells, who was working near the bank, witnessed the event and called the police.
Neither Lewis nor Wells could visually identify the assailants. However, Lewis was able to describe the armed perpetrator's build and dress, i.e., the hooded sports jacket. Lewis additionally told the police that the armed assailant appeared to be in his early twenties, or to have a "youthful appearance" as he explained at trial.
Shortly thereafter, a tip led the police to a nearby convenience store, the Shop-a-Lot. This store's surveillance video tape showed DL, wearing a sports jacket, and Lavar Price, who later agreed to plead guilty to the robbery, in the store between 7:57 p.m. and 8:03 p.m., less than 45 minutes before the robbery. Lewis, the victim, identified his armed assailant as the person wearing the hooded sports jacket shown on the videotape; a Shop-a-Lot employee identified the same person shown on the videotape as DL.
The police obtained a search warrant for DL's residence where the gun, later identified by the victim as the weapon used in the robbery, was discovered. DL, then 13 years old, was brought to the police station for questioning and to allow the victim to make an auditory identification. The victim was not allowed to see DL but did hear him speak and was relatively sure the voice matched the armed perpetrator, although he was not positive. Lewis also identified the jacket provided by DL's mother, state's exhibit # 2, as the one worn by his armed assailant.
DL, along with four other individuals, Lavar Price, BW, SB, and Tyrone Price,[2] were subsequently arrested for the armed robbery. Lavar Price agreed to plead guilty, BW and SB admitted delinquency, and DL proceeded to the adjudication hearing asserting an alibi defense.
The juvenile judge adjudicated DL, then age 14, as delinquent and ordered him confined until his 21st birthday without benefit of probation, parole, suspension of imposition or execution of sentence, modification or furlough.

II.
When a defendant challenges both the sufficiency of evidence and one or more other trial errors, the appellate court should first determine the sufficiency of the evidence challenge. State v. Spencer, 29,993 (La.App. 2d Cir. 1/21/98), 707 So.2d 96.
In a juvenile delinquency proceeding, the state's burden of proof is the same as in a criminal proceeding against an adult. La. Ch.C. art. 883. The constitutional standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable *626 doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Evans, 29,675(6) (La.App. 2d Cir. 9/24/97), 700 So.2d 1039, writ denied 97-2942 (La.1/9/98), 705 So.2d 1121. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by that evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Spencer, supra.
In a juvenile case, appellate review extends to both the facts and the law. La. Const. Art. 5, § 10(A), (B). Nevertheless, we recognize that the juvenile judge observes the conduct and demeanor of the witnesses and is thus in a far better position to determine credibility and weigh the evidence. Thus, we afford great deference to the judge's findings of fact and to his determination of credibility of the witnesses and the weight to be given to their testimony. State in Interest of D.S., 29,554 (La.App. 2d Cir. 5/7/97), 694 So.2d 565, and citations therein.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2d Cir. 4/12/96), 677 So.2d 1008 (on rehearing), writ denied 96-1807 (La.2/21/97), 688 So.2d 520. Moreover, positive identification by only one witness may be sufficient to support a defendant's conviction. State v. White, 28,095 (La.App. 2d Cir. 5/8/96), 674 So.2d 1018, writ denied 96-1459 (La.11/15/96), 682 So.2d 760.

III.
By his first assignment of error, DL contends that the evidence is insufficient to show that he was present at the scene of the crime or was the armed perpetrator. However, this assignment does not merit reversal.
Lavar Price, who agreed to plead guilty to first degree robbery in exchange for truthful testimony against DL, stated that both he and DL stole the money from the victim while BW and SB, both juveniles, acted as lookouts in case the police arrived. Specifically, Lavar Price testified that he, DL, BW, SB, and Tyrone Price were all walking around the projects and DL said that he wanted to hold the gun. Lavar Price then testified that they joked about robbing someone shortly before they spotted the victim, whom DL then robbed at gunpoint.
SB admitted delinquency based upon a reduced charge in exchange for truthful testimony against DL. At the time of trial, she was confined at Northwest Detention Center, along with DL. She testified that DL held the gun on the victim and ordered him to hand over the money. She additionally stated that DL told her not to testify.
BW, 11 years old at the time of trial, also admitted delinquency based upon the robbery and was confined to Northwest Detention Center. At trial, BW admitted that he made an earlier statement to the police implicating DL as the armed robber. BW also admitted to telling the police that in addition to himself, DL, SB, Lavar Price and Tyrone Price were involved in the robbery, stating the relative positions of the accomplices during the armed robbery.
Nonetheless, BW testified that neither DL nor himself was involved in the robbery, although he said that he was not coerced into pleading guilty. He stated that he had made up all of the facts concerning the robbery, including the names of the other accomplices, the gun, and the jacket. He also denied any conversations with the assistant district attorney concerning physical threats made by DL because of BW's possible testimony.
DL took the stand and admitted that he initially told the police that at 6:25 p.m., the night of the robbery, he went to his grandmother's house and did nothing till after midnight. In fact, DL had made numerous statements to the police which were inconsistent *627 with respect to when he got to his grandmother's house, how he got there, who he traveled with, and the weather conditions. At trial, he testified that he left to go to his grandmother's house shortly after 8:00 p.m. This most recent version of his story accounts for his presence on the Shop-a-Lot video. DL attempted to explain his inconsistent statements by stating that he had gotten his dates mixed up.
DL testified that he remained at his grandmother's house till about 12:00 a.m. or 1:00 a.m., whereupon he was taken back to his home. However, he said that at one point during the night, he briefly left his grandmother's house to go to the projects to borrow an item from Lavar Price. He said that he briefly met with Lavar Price, but that he did not commit the armed robbery and the other witnesses implicating him are lying.
The defense then called several other witnesses who testified that DL was at his grandmother's the night of the armed robbery.
Upon review of the record, we can not declare the evidence insufficient. The victim identified DL as the armed assailant shown on the Shop-a-Lot surveillance video, identified DL's jacket and gun, and felt relatively sure in the auditory identification of DL's voice. Two accomplices explicitly testified that DL was the armed perpetrator. Lavar Price's testimony is quite detailed and SB's account was not impeached. DL's own testimony which was riddled with inconsistencies and his admittance that he left his grandmother's house at some time to meet with Lavar Price on the night of the armed robbery further erodes his own alibi. Therefore, the lower court did not commit manifest error in adjudicating DL delinquent.

IV.
DL also appeals his sentence to the custody of the Department of Public Safety and Corrections until his 21st birthday without benefit of probation, parole, suspension of imposition or execution of sentence, modification or furlough.
Under the general guidelines provided for juvenile cases in La. Ch.C. art. 901, the adjudicating judge should impose the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the best interest of society. State in Interest of T.L., 28, 564 (La.App. 2d Cir. 5/8/96), 674 So.2d 1122. The general disposition guidelines do not apply when a child has been adjudicated a delinquent for the violation of armed robbery. La. Ch.C. art. 901E. Disposition rules for armed robbery are set forth in La. Ch.C. art. 897.1 which provides in part:
A. Notwithstanding any other provision of law to the contrary, after adjudication of a felony-grade delinquent based upon violation of R.S. 14:30, first degree murder; R.S. 14:30.1, second degree murder; R.S. 14:42, aggravated rape; R.S. 14:44, aggravated kidnaping; R.S.14:64, armed robbery; or R.S. 14:113, treason; the court shall commit the child to ... a secure detention facility until the child attains the age of twenty-one years without benefit of parole, probation, suspension of imposition or execution of sentence of sentence, modification or furlough.
B. Notwithstanding any other provision of law to the contrary, after adjudication of a felony-grade delinquent act based upon a violation of R.S. 14:64, armed robbery, the court shall commit the child to ... be placed within a secure detention facility for the length of the term imposed by the court at the disposition hearing without benefit of parole, probation, suspension of imposition or execution of sentence, modification or furlough.
The juvenile court noted the conflict within article 897.1, where subsection A provides a mandatory sentence for an adjudication of delinquency based upon commission of armed robbery and subsection B appears to affords the court discretion as to the length of term of commitment the juvenile is to remain in custody.
Two circuits have recently addressed this issue and reached opposite conclusions.[3] In *628 State in Interest in C.D., 95-160 (La.App. 5th Cir. 6/28/95), 658 So.2d 39, a juvenile was adjudged delinquent and sentenced to confinement until he reached 21 years of age, all in the same judgment. The court described the conflict as an "oversight" because a disposition hearing required by subsection B would be futile where a mandatory sentence is imposed. The court determined that the more specific rule in subsection B controlled, which stated that the trial court's discretion in ordering the length of time a juvenile is to remain in custody for an armed robbery is determined at the disposition hearing. Because there was no disposition hearing, the Fifth Circuit vacated the sentence and remanded the case.
The Fourth Circuit in State in Interest in T.J.T., 97-0335 (La.App. 4th Cir. 4/9/97), 692 So.2d 1385, declined to follow the Fifth Circuit, reasoning that both sections could be given effect. The court held that the term of commitment for armed robbery was mandatory. Because the other enumerated crimes under article 897.1A, except armed robbery, are all punishable by life imprisonment in the adult criminal code, the court reasoned that imposition of "juvenile life" could not correspond to an "adult sentence" for armed robbery, La. R.S. 14:64. Instead, the court reasoned that subsection B allows consistency by requiring the trial court to set the numerical length of the term imposed instead of ordering "juvenile life," which would otherwise not comport with the adult criminal code. The court additionally noted that although a disposition hearing is required, a review of mitigating factors is not.
We decline to follow the Fourth Circuit's interpretation of article 897.1, and instead agree with the Fifth Circuit, but with additional reasons. La. R.S. 15:906, which was amended in the same act in which article 897.1 was enacted, states in part:
A.(2) Except as provided in Subsection B of this section, it is hereby declared to be the public policy of this state that commitment of a juvenile to the care of the department is not punitive nor in [sic] anywise construed as a penal sentence....
B. In cases governed by Children's Code Article 897.1, it is hereby declared to be the public policy of this state that commitment of a juvenile to the custody of the Department of Public Safety and Corrections for placement in a secure facility without benefit of parole, probation, suspension of imposition or execution of sentence, modification, or furlough, is necessary and proper because for these very serious offenses the protection of society is the primary objective. (emphasis added).
Turning to the text of Article 897.1, we find that under either subsection A or B, the trial court must impose the term of commitment for armed robbery "without benefit." This provision, as amplified by La. R.S. 15:906B, intends to impose serious consequences for serious crimes.[4] Unlike the Fourth Circuit, however, we do not interpret subsection B as a purely technical provision designed to comport with the mandatory sentencing scheme in subsection A. Likewise, the Fourth Circuit analysis does not explain the requirement for a disposition hearing where no mitigating factors may be considered.
Moreover, rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible. Lieber v. Caddo Levee Dist. Bd. of Comm'rs, 27,267 (La.App. 2d Cir. 8/23/95), 660 So.2d 188, writ denied 95-2355 (La.12/8/95), 664 So.2d 427. But if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. State in re Div. of Admin. v. McInnis Bros. Constr., 97-0742 (La.10/21/97), 701 So.2d 937.
Thus, we view subsection B as the more specific and controlling provision in this instance. While the term of commitment must be without benefit, the length of the term is not mandatory. Therefore, a disposition hearing is also required to assess the aggravating and mitigating factors of La. Ch.C. *629 901. We will review the juvenile court's assessment of the factors accordingly.
In reviewing a claim for excessiveness, the appellate court must first ascertain whether the lower court took cognizance of these criteria and whether the record reflects an adequate factual basis for the commitment imposed. State in Interest of J.D.J., 27, 673 (La.App. 2d Cir. 9/27/95), 661 So.2d 519. Following that determination, the reviewing court need only explore for constitutional excessiveness in light of the circumstances of the case and the background of the juvenile. State in Interest of KH, 612 So.2d 1036 (La.App. 2d Cir.1993). Absent a showing of manifest abuse of discretion, the disposition will not be set aside as constitutionally excessive. State in Interest of T.L., supra.
In the instant case, the lower court noted the conflict in article 897.1 and the cases on point; the court concluded that it had discretion as to the length of the sentence. However, after reviewing the pre-disposition report[5] as well as the factors contained in La. Ch.C. art. 901 the court decided that the maximum sentence was appropriate, placing DL is a secure confinement until age 21 without benefit.
Prior to the instant offense, DL was arrested on two separate occasions for theft. The pre-disposition report indicates that DL is in the 7th grade, had below average grades, was suspended often, had "negative peer relationships," and displayed poor judgment. DL had six witnesses testify on his behalf at the disposition hearing. He has a prior history of theft and was the gunman in the instant case. While the witnesses told the court that children are entitled to a mistake, DL may not evade the consequences of his mistake by inventing an alibi. While DL is only 14 years old, his use of a firearm in this case, together with his propensity to commit thefts shows his need for correctional confinement. In fact the armed robbery is the latest in a string of criminal acts within a short time span, all resulting in delinquency petitions. Based upon this record, we can not say that the District Court abused its discretion. Therefore, the disposition of the lower court ordering confinement not to exceed DL's 21st birthday was not an abuse of discretion.

V.
For the foregoing reasons, the adjudication of delinquency and disposition of sentence are affirmed.
ADJUDICATION AND DISPOSITION AFFIRMED.
NOTES
[1] Lewis testified he was not certain exactly how much money was in the deposit sack since his duty was only to transport the sack, not to package it. The actual amount is irrelevant.
[2] Tyrone Price's role in the armed robbery and his subsequent disposition remains unclear based upon this record. However, the lack of clarity in no way affects the appellate review of DL's adjudication and sentence.
[3] The First Circuit noted it but did not reach the issue in State in Interest of L.C., 96, 2511 (La. App. 1st Cir. 6/20/97), 696 So.2d 668.
[4] Generally, the court has discretion to reprimand and merely warn the child, or to place the child on probation, regardless of whether the delinquent act constitutes a felony or misdemeanor. La. Ch. C. arts. 897, 899.
[5] The report acknowledges that the sentencing court had discretion to impose a sentence.