GASKINS, J.
11 S.M.T., the mother of S.A.T. and R.L.T., appeals from a trial court judgment terminating her parental rights and releasing the children for adoption. For the following reasons, we affirm.
FACTS
S.M.T. is the mother of S.A.T. (born in 2002) and R.L.T. (born in 2004). S.A.T.’s father is W.A.F. He is currently incarcerated in this state serving a 45-year sentence for attempted first degree murder. R.L.T.’s father is unknown. On April 18, 2007, the Louisiana Department of Social Services (DSS) received a report of abuse or neglect regarding the children. The mother had been arrested on drug charges at her boyfriend’s house. The children were left with her boyfriend’s relatives. Later, an unrelated friend of the maternal grandmother went to the house, at the grandmother’s request, and took the children.
The DSS obtained an oral instanter order from the trial court on April 18, 2007, removing the children from the custody of the friend and placing them in the custody of the DSS under foster care. The children were adjudicated in need of care on July 2, 2007. At the hearing, the mother stipulated that the children were in need of care.
The original goal of the DSS was to reunify the children with their parents. The DSS devised several case plans for the mother to work through to achieve reunification. As a result of her arrest on drug charges, the mother pled guilty to possession of Schedule II CDS on August 7, 2007. She was sentenced to four years at hard labor. It appears that the sentence was suspended and she was placed on two years’ supervised probation with |2special conditions. The mother did not fully comply with the conditions of her probation. On October 30, 2007, she was ordered to serve 90 days for a probation violation and was then placed back on probation. Although not clear from the record, it appears that the mother had another probation violation and eventually was ordered to serve a portion of her sentence.
*1088 According to the DSS, the mother was in and out of jail during the time that the case plans for reunification were in place. Some of her requirements included completing parenting classes; attending a psychological evaluation and possible treatment; providing stable housing with working utilities; providing medical care for the children in a timely fashion; avoiding criminal activity upon being released from prison; submitting to a substance abuse assessment and completing any recommended treatment; submitting to random drug testing; visiting the children bimonthly; contributing financially to the children or providing token gifts for birthdays, etc.; keeping the case manager aware of any changes in her home such as financial status, employment status, and changes in address or phone numbers; providing the case manager with the names and addresses of family and/or friends for possible placement of the children other than foster care; and allowing the case manager to visit her home announced and unannounced.
The mother managed to complete parenting classes while incarcerated, but did not comply with any of the other requirements of the case plan. She refused to appear for drug testing or a psychological evaluation which had been arranged for her. She did not keep the case ^manager informed as to her whereabouts. The one time that she did appear for visitation, she arrived late. She did not contribute financially to the children.
S.A.T.’s father was unable to comply with any case plan for reunification due to his lengthy incarceration. R.L.T.’s father is unknown. The DSS made efforts to determine the identity of the child’s father, but was unable to do so. The mother offered no assistance in determining the identity of R.L.T.’s father.
On April 30, 2009, more than two years after the children were taken into custody, the DSS filed a petition for the involuntary termination of parental rights and certification for adoption. The DSS alleged that the children had been in the custody of the DSS for more than one year pursuant to a court order and there was no substantial parental compliance with the case plan. According to the DSS, there was no reasonable expectation of significant improvement in the parents’ condition or conduct in the near future. The DSS asserted that the best interest of the children required termination of the parental rights in order to allow the children to be freed for adoption.
A hearing on the termination of parental rights began on July 15, 2009. The hearing was reconvened on September 14, 2009. On that date, W.A.F. stipulated that he agreed to the termination of his parental rights to S.A.T.
On September 18, 2009, the court put reasons on the record, in open court, finding that when the mother was not in jail, she did not comply with the Lease plan. Therefore, the trial court terminated her parental rights as to the children. On September 21, 2009, a judgment was filed, terminating the mother’s parental rights to S.A.T. and R.L.T., terminating W.A.F.’s parental rights as to S.A.T., and terminating the parental rights of the unknown father as to R.L.T.
The mother appealed. She argues that the trial court erred in terminating her parental rights without first requiring the DSS to demonstrate that reunification efforts were not required as set forth in La. Ch. C. ai't. 672.1. She also contends that the trial court erred in terminating her parental rights to R.L.T. and S.A.T. based upon a finding that the requirements of La. Ch. C. art. 1015(4), (5), or (6) had been satisfied.
*1089 COMPLIANCE WITH LA. CH. C. ART. 672.1
The mother claims that the trial court erred in terminating her parental rights ■without first requiring the DSS to file and prove a La. Ch. C. art. 672.1 motion. This article allows the DSS to bypass the reunification efforts under certain circumstances. The mother believes that this article is a threshold requirement before her parental rights can be terminated. This argument is without merit.
Legal Principles
La. Ch. C. art. 672.1 provides:
A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a motion for a judicial determination that efforts to reunify the parent and child are not required.
B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not | ¿required, considering the health and safety of the child and the child’s need for permanency.
C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:
(1) The parent has subjected the child to egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015.
(2) The parent has committed murder or manslaughter of another child of the parent or has aided or abetted, attempted, conspired, or solicited to commit such a murder or manslaughter.
(3) The parent has committed a felony that results in serious bodily injury to the child or another child of the parent.
(4) The parental rights of the parent to a sibling have been terminated involuntarily.
D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted immediately and shall be conducted within thirty days after the determination.
This article is permissive and not mandatory. It provides that the DSS “may” file a motion for a judicial determination that efforts to reunify the child and parent are not required. State ex rel. H.M. v. T.M., 44,446 (La.App. 2d Cir.5/6/09), 12 So.3d 409. It does not compel the DSS to file a motion for a judicial determination that efforts to reunify the family are not required. State ex rel. P.A.P., 44,221 (La.App. 2d Cir.2/4/09), 4 So.3d 182.
Discussion
Under the facts of this case, La. Ch. C. art. 672.1 has no application. The comments to the article indicate that it is designed for use when reunification is not a viable, realistic option. The article recognizes that in |,¡such circumstances, lengthy delays in permanent placement of a child may result in psychological damage.
In this ease, the DSS was not proceeding under La. Ch. C. Art. 672.1. Rather, the DSS made extensive efforts at reunification and made a shift in the case plan to termination of parental rights and adoption only after the mother failed to comply with her case plan after ample time and opportunities were presented. The DSS is proceeding in this matter under La. Ch. C. Art. 1015, not La. Ch. C. Art. 672.1. Therefore, the DSS was not required to seek a judicial determination that efforts to reunify the family were not required. The mother is simply erroneous in arguing that the article is applicable to this case. There is no trial court error in this regard.
*1090 COMPLIANCE WITH LA. CH. C. ART. 1015
The mother claims that the trial court erred in terminating her parental rights to R.L.T. and S.A.T. based upon a finding that the requirements of La. Ch. C. art. 1015(4), (5), or (6) had been satisfied. She maintains that the DSS failed to show what efforts were made by the DSS to assist her in complying with the case plan while incarcerated. She stated that she could provide only limited contact or support while incarcerated and no attempts were made by the DSS to facilitate visitation. She claims that there was no evidence of her ability to provide financially for the children. She also contends that she could not comply with the case plan because of her addictions. Therefore, she argues that the trial court erred in terminating her parental rights to the children.
17Legal Principles
Title X of the Louisiana Children’s Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the state can take against its citizens. State ex rel. A.T., 2006-0501 (La.7/6/06), 936 So.2d 79; State ex rel. C.M.M. v. T.P.M., 42,238 (La.App. 2d Cir.5/9/07), 957 So.2d 330; State ex rel. A.D.W., 43,012 (La.App. 2d Cir.1/9/2008), 974 So.2d 137.
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. Parents have a natural, fundamental liberty interest to the continuing companionship, care, custody, and management of their children. These interests warrant great deference and require full, vigilant due process protection that fair procedure be followed when the state seeks to terminate the parent-child legal relationship. Balanced against those protections is the child’s profound interest in terminating parental rights which prevent adoption, and hamper the establishment of secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing the parents’ and the child’s interests, the courts of this state have consistently found the interests of the child to be paramount over those of the parents. State ex rel. C.M.M. v. T.P.M., supra.
The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, Land mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the state remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. State ex rel. S.M.W., 2000-3277 (La.2/21/01), 781 So.2d 1223; State ex rel. C.M.M. v. T.P.M., supra.
Although there are several statutory grounds for involuntary termination of parental rights set forth in La. Ch. C. art. 1015, only one ground need be established. State ex rel. S.C.M., 43,441 (La.App. 2d Cir.6/4/2008), 986 So.2d 875; State ex rel. J.W.M., 44,513 (La.App. 2d Cir.6/24/2009), 15 So.3d 1218. According to La. Ch. C. art. 1015(4),(5), and (6), the grounds for termination of parental rights include:
(4) Abandonment of the child by placing him in the physical custody of a nonpar- *1091 ent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child’s parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or | ^communicating with him for any period of six consecutive months.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
(6) The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child’s age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.
The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La. Ch. C. art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State ex rel. C.M.M. v. T.P.M., supra. Even upon finding that the state has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child’s best interest. State ex rel. C.E.C. v. D.M.D.B., 40,409 (La.App. 2d Cir.9/28/05), 912 So.2d 418; State ex rel. C.M.M. v. T.P.M., supra.
La. Ch. C. art. 1036, which addresses proof of parental misconduct, provides in pertinent part:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
| m(l) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
*1092 D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The state must prove that the parent is unfit to retain parental control and that there is no reasonable expectation of reformation in the foreseeable 1 nfuture in order to obtain termination of parental rights when the child has been removed for the parent’s home. State ex rel. B.H. v. A.H., 42,864 (La.App. 2d Cir.10/24/07), 968 So.2d 881.
The issue of parental compliance with a case plan, the parent’s expected success of rehabilitation, and the expectation of significant improvement in the parent’s condition and conduct are questions of fact in a proceeding for termination of parental rights. An appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State ex rel. C.E.C. v. D.M.D.B., supra; State ex rel. S.S.S., 39,047 (La.App. 2d Cir.8/18/04), 880 So.2d 153; State ex rel. C.M.M. v. T.P.M., supra.
Children have a need for permanency. Forcing children to remain in foster care indefinitely, when there is no hope of reuniting them with them families, runs afoul of the state and federal mandates to further the best interests of the child. State ex rel. C.E.C. v. D.M.D.B., supra; State ex rel. C.M.M. v. T.P.M., supra; State ex rel. A.D.W., supra.
Discussion
The initial portion of the hearing on the termination of parental rights was held in July 2009. The mother was incarcerated at that time. However, she was present in court. She had been transported to court from jail. At the hearing, Joanna Morgan-Huckabee, the child welfare specialist serving as the case manager, testified regarding the mother’s noncompliance with her case plan. The mother began parenting classes while incarcerated. She did not complete the course during her first incarceration, but did finish 112during a subsequent incarceration. Ms. Morgan-Huckabee stated that the mother was out of jail for a three-month period and then for a five-month period during the time the DSS sought reunification. During the time that she was not incarcerated, the mother refused to go to a psychological evaluation. She missed a second appointment because she had gone back to jail. The case worker stated that the mother had not contributed financially to the children and did not go to scheduled drug assessment or random drug tests.
When the mother was not incarcerated, she failed to keep the case worker informed of her whereabouts. At one point, the mother’s telephone was disconnected. After conducting a records check in June 2008, the case worker found that the mother was back in jail.
*1093 While out of jail, the mother was supposed to see the children twice a month. Although transportation was arranged, she failed to show up. On the one occasion that she appeared, the mother was late for visitation. The case worker testified that the mother could have gone to medical appointments with the children when she was not incarcerated, but the DSS could not locate her.
Ms. Morgan-Huckabee testified that the mother was released from jail at the end of July 2009. The mother was informed of the second hearing date in September 2009, but did not appear. At the hearing in September 2009, the case worker outlined the mother’s failure to attend drug assessment and random drug tests, and her failure to go for a psychological evaluation. The case worker said that she had notified the mother of the | ^appointments and had spoken to her on the phone and still she failed to attend. Ms. Morgan-Huckabee stated that the mother attended one family visit, but showed up 30 minutes late. The mother also failed to attend a family planning meeting. Ms. Morgan-Huckabee stated that she visited the address furnished by the mother as her residence, but no one came to the door or answered the telephone. According to the case worker, the mother now has a third child who was about nine months old. That child is also in the custody of the DSS.
The record shows that the DSS clearly established grounds for the termination of the parental rights of the mother to S.A.T. and R.L.T. by clear and convincing evidence. The mother complains that the DSS did not provide evidence of efforts to assist her in achieving her case plan. She claims that the DSS failed to provide opportunities for visitation when she was incarcerated and provided no help in dealing with her addictions. However, the record shows that the DSS set up appointments for a psychological evaluation and drug abuse assessment. The mother refused to attend the appointments. Therefore, the mother’s argument that she was not given help with her addictions is unfounded.
Further, the mother was not incarcerated the entire time that the children were in the custody of the DSS. When the mother was not incarcerated, the DSS set up opportunities for visitation with the children and provided transportation. In several instances, the mother failed to appear. On the one visit that she attended with the children, the mother | ^arrived 30 minutes late. The mother’s complaint that she was not given help in visiting the children is not supported by the record.
The record shows that the mother completed parenting classes while incarcerated. However, when she was not in jail, she was uncooperative with the DSS and failed to take any necessary steps to regain custody of the children. The mother failed to keep the DSS apprised of her whereabouts and significant changes affecting her ability to comply with the case plan. Most notable is the fact that the mother was informed of the second hearing date and failed to appear. She was present at the first hearing because she was incarcerated and was brought to the hearing from jail.
The DSS proved by clear and convincing evidence that the children were in state custody for more than one year and that the mother did not substantially comply with the case plan for reunification. The DSS further carried its burden of showing that there is no reasonable expectation of significant improvement in the mother’s condition in the near future. The mother’s criminal conviction points to substance abuse which renders her unable or incapable of exercising parental responsibilities without exposing the children to a substantial risk of harm, based upon her established pattern of behavior. The mother *1094 has also exhibited a pattern of repeated incarceration that has rendered her unable to care for the immediate and continuing physical and emotional needs of the children for extended periods of time.
The DSS has proven that the best interest of the children requires the termination of the parental rights of the mother, freeing the children for adoption. The trial court did not err in ordering the termination of the 115parental rights of the mother to S.A.T. and R.L.T., releasing the children for adoption.
CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court, terminating the parental rights of the mother to S.A.T. and R.L.T., releasing the children for adoption. Costs in this court are assessed to the mother.
AFFIRMED.