LOLLEY, J.
11Jennifer Diane Slaton Henry appeals the judgment of the Third Judicial District Court, Parish of Lincoln, State of Louisiana, terminating her parental rights to her minor, child, D.B.A. For the following reasons, we affirm the trial court’s judgment.
FACTS
D.B.A., born May 29, 2011, is the biological daughter of Jennifer Diane Slaton Henry (“Jennifer”) and Starr Michael An-gelí (“Angelí”). Gregory Lee Henry was married to Jennifer Henry and is D.B.A.’s legal father. On December 1, 2011, six-month-old D.B.A. was to spend several days with her maternal aunt, Amanda Hunter. When Hunter- arrived to pick up D.B.A., Jennifer explained that D.B.A. had bruising due to constipation, which she was treating with rash cream and prune juice. Hunter inspected the area around the baby’s vagina and anus, and contacted her mother, D.B.A.’s grandmother, who directed Hunter to take the baby to-the pediatrician’s office. The pediatrician referred D.B.A. to the North Louisiana Medical Center emergency room in Ruston, Louisiana.
In the emergency room, D.B.A. was immediately treated' by a rapid response nurse, who stated the baby suffered from a hematoma in the vaginal and anal area. The sexual abuse nurse evaluator observed swelling, inflammation, tearing o'f the anus, and an open'sphincter. D.B.A. was evaluated next by Dr. Meade O’Boyle, who confirmed sexual abuse and penetration, and concluded that D.B.A. had been “brutally molested anally.” Further, Dr.- O’Boyle stated that this is one of the “worst cases of sexual abuse on an infant” that she has seen. The Department of Children and IgFamily Services (“the Department”) -was called, and an oral instanter order was issued for the temporary removal of D.B.A. from her parents’ custody.
At a hearing the following day, the trial court continued the state’s custody of D.B.A., ordered a forensics examination on D.B.A., and terminated visitation rights for both parents. The results of the court ordered DNA paternity test indicated a 99.9999% probability that Angelí is D.B.A.’s biological father. On January 10, 2012, Jennifer .apd Angelí stipulated to D.B.A. being a “child in need of care.”
’ Case review hearings were held monthly, and the trial court maintained the no contact order because of the active criminal proceedings against both biological parents regarding the sexual abuse of their child. On October 16, 2012, Jennifer pled guilty to La. R.S. 14:93(A)(1), for the intentional or criminally negligent mistreatment of D.B.A. by failing to seek medical attention which resulted in unjustifiable pain or suffering. In February 2013, Angelí also pled guilty to La. R.S. 14:93(A)(1).
On May 3, 2013, the Lincoln Parish District Attorney filed a motion on behalf of the Department for judicial determination that efforts to reunify the parents and’ the child were not required under La. Ch. C. art. 672.1, citing the felony convictions of both biological parents for crimes resulting in serious bodily injury to their child. After a hearing, the motion was granted, efforts to reunify D.B.A. with her parents ceased, and the goal for D.B.A. was changed to adoption. On September 4, 2013, the Department filed- a petition to terminate parental rights against Jennifer and Angelí in order to proceed with the *319 goal of adoption. Subsequent amendment to the | ¡¡petition added legal father, Gregory Lee Henry, as a party. . On December 3, 2013, Jennifer filed an exception of no right of action arguing the Department was not the proper party to bring this action. The trial court denied this exception, and on January 21, 2015, a hearing resulted in a judgment terminating the parental rights for Jennifer Henry, Angelí, and Gregory Henry. Jennifer now appeals.
DISCUSSION
The fundamental purpose of involuntary termination proceedings is to provide^the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for the child’s physical,, emotional, and mental health needs and adequate rearing by providing an. expeditious judicial process for the termination, of all parental .rights and responsibilities and to achieve permanency and stability for the child. State ex rel. S.M.W., 2000-3277 (La.02/21/01), 781 So.2d 1223; State In Interest of B.J., 48,857 (La.App.2d Cir.01/15/14), 135 So.3d 777. The focus of an involuntary termination proceeding is not whether..the parent should be deprived of custody, but whether it would be in the bést interest of. the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the state remains to secure the best interest for the child, including the termination of parental rights if justifiable grounds exist and are proven. Id.
Louisiana Ch. C. art.. 1015 provides the statutory grounds by -which a trial court may involuntarily terminate the rights and privileges of parents; State ex rel. H.A.B., 2010-1111 (La.10/19/10), 49 So.3d 345; State in Interest of C.V.W., 48,166 (La.App.2d Cir.04/10/13), 113 So.3d 1202. In order to .terminate parental rights, the trial court must find that the state has established at least one of the statutory grounds set forth in La. Ch. C. art. 1015, by clear and convincing evidence. State ex rel. H.A.B., supra. Even upon finding that the state has met its evidentia-ry burden, a trial'court should not terminate parental rights unless it determines that termination is in the child’s best inter-ést.; La. Ch.' C. art. 1037(B). Whether' termination of parental rights is warranted is a question of fact; and a trial court’s determinations will not be set aside in the absence of manifest error. State ex rel. H.A.B., supra; State in Interest of S.A.T., 49, 143 (La.App.2d Cir.05/14/14), 141 So.3d 816.

Right of Action

In her first assignment of error, Jennifer alleges that the trial court erred by denying her exception of no right action. She maintains that La. Ch. C. art. 1004(D) limits the situations in which the Department may file a petition to terminate parental rights. She argues the Department was not the proper party to institute the action to terminate her parental rights, claiming the district, attorney must file the petition on behalf of the Department. The trial court found that La. Ch. C. art. 1004.1 is the .controlling provision in this matter. The issue. presented is whether the petition to terminate parental rights was filed by the proper party. Because resolution of this issue involves the applicability and interpretation of La. Ch. C. arts. 1004 and 1004.1, this case involves a question, of law, which requires de novo review.
|BUnder our longstanding rules of statutory construction, where it is possible, courts have a -duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other *320 provisions dealing with the same subject matter. See Gannett River States Publ. Corp. v. Monroe City Sch. Bd., 44,231 (La.App.2d Cir.04/08/09), 8 So.3d 833, 837, writ denied, 2009-1029 (La.06/19/09); 10 So.3d 745. Moreover, rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible. State In Interest of D.L., 30,878 (La.App.2d Cir.06/24/98), 715 So.2d 623, 628. But if there is a conflict, the statute specifically directed to the matter, at issue must prevail as an. exception to the statute more general in character. Id,
The Children’s Code articles at issue here are contained within the title that addresses judicial certification of children for adoption. In all proceedings under this title, “the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proved.?’ La. Ch. C. art. 1001. Termination of parental -rights is the first step toward permanent placement of the child in a- safe and suitable home,, and “the procedural provisions of this Title shall be construed liberally”. Id.
Louisiana Ch. C.’art. 1004- generally outlines the procedure for filing and identifies the proper party to file a petition for termination’ of parental rights under certain circumstances. Louisiana Ch. C. art. 1004.1 is more narrow and applies to a specific situation.' While the general article’ is permissive on the timeline for filing, the latter specific article requires the Department to file under circumstances such as the ones present here.
| (¡Louisiana Ch. C. art. 1004.1 applies when children are in state custody and provides:
The department shall file and pursue to judgment in the trial court a petition to terminate the parental rights of the parent or parents if the child has been in state custody for seventeen of the last twenty-two months, unless the department has documented in the case plan a compelling reason why filing is. not in the best interest of the child. (Emphasis added).
Louisiana Ch. C. art. 1004.1 mandates the Department must file for termination of parental rights after a certain time period elapses, unless the Department has documented in the'case plan a compelling reason why filing is not in the best interest of the child. Termination of parental rights under article 1004.1 ’ does not limit the grounds that the Department may proceed •under when the child has been in the state’s custody for the requisite period of time.
D.B.A. was placed in state custody on December T, 2011. On September 4, 2013, after 22 months had passed, the Department filed a petition tb terminate Jennifer’s parental fights. The time requirement of La. Ch. C. art. 1004.1 had been met, and the Department was required to file the petition and initiate termination of parental rights. Louisiana Ch. C. art. 1004.1 is specifically directed to the issue here, where D.B.A. had been in state custody for more than 17 of the last 22 months; therefore, it must prevail as an exception to La. Ch. C.- art. 1004, which is more general in character.
Louisiana Ch. C. art. 1004.1 is the more specific, controlling provision, and it gives authorization under these circumstances for the Department to institute the proceeding to terminate Jennifer’s parental ^rights. The trial court found the Department was within its statutory and mandatory authority to initiate the termination proceeding. We find no error in the trial court’s application of this provision to the instant matter or its denial of Jennifer’s exception of no right of action. Therefore, this assignment of error is without merit.

*321
Termination of Parental Rights

, In her second assignment of error, Jennifer maintains that the trial court erred in finding that the state proved by clear and convincing evidence that her parental rights should be terminated. The trial court found evidence that grounds for involuntary termination were met because, both parents were convicted of a felony that resulted in serious bodily injury to their child. Further, the trial court found it was in D.B.A.’s best interest to terminate parental rights.
A trial court considering a petition to terminate parental rights must make two findings: (1) that the Department established one of the enumerated grounds for termination set forth in La. Ch. C. art. 1015 by clear and convincing evidence, and (2) that termination is in the best interest of the child. State ex rel. D.L.R., 2008-1541 (La.12/12/08), 998 So.2d 681, 688. As long as the child’s permanent plan is reunification, the state must undertake reasonable efforts to assist the parent in removing the obstacles to reunification, except in the extraordinary’ circumstances set forth in the reunification statute. ’La. Ch. C. 672.1; State ex rel. H.M. v. T.M., 44,446 (La.App.2d Cir.05/06/09) 12 So.3d 409. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined | «that the parent has committed a felony that results in serious bodily injury to the child or another child of the parent or any other child. La. Ch. C. 672.1(C)(3).
During the family team conference in June 2013, the goal of the case plan was changed from reunification to adoption. A ruling was issued in August 2013, finding that the state proved by clear arid convincing evidence pursuant to La. Ch. C. art. 672.1(C)(3) that reunification efforts were no longer required in light of Jennifer’s felony Conviction for the abuse and neglect of her child which resulted in serious bodily injury. On September 4, 2013, -in accordance with the statutory mandate under La; Ch.- C. art. 1004.1, the Department filed a petition for termination of parental rights and certification for adoption; identifying grounds for filing pursuant to La. Ch. C. art. 1015, which states, in pertinent part:
The grounds for termination of parental rights are:' ....
[[Image here]]
(3) Misconduct of the parent toward this child or any other child of the parent or any other child which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior be- ' low a reasonable standard of human dé- ' cency, including but not limited to the conviction, commission, aiding or abet- * ting, attempting, conspiring, or soliciting to commit any of the following:
[[Image here]]
(h) A felony that has resulted in serious bodily injury.
Here, the trial court properly made the two required findings in order- to terminate Jennifer’s parental rights: the Department established grounds for termination under La. Ch..C. art. 1015(3)(h) by clear and convincing 19evidenee, and termination of Jennifer’s- parental rights is hr D.B.A.’s: best interest. In its oral reasons for judgment, the ■ trial court noted that Jennifer’s felony conviction for cruelty .to a juvenile is uncontradicted proof that the grounds for termination under article 1015 have been met. The trial court also explained how Jennifer’s interest in not terminating parental rights is at odds with D.B.A’s best interest in- continuing to reside in a safe, secure, stable, long-term home. Further, the record includes reports from, the CASA volunteer appointed to D.B.A.’s case, which note Jennifer’s lack *322 of understanding of the severity of the trauma D.B.A. suffered and failure to work the case plan. The CASA volunteer advocated to terminate parental rights, even before Jennifer’s guilty plea and conviction, recommending instead adoption by Hunter and her husband.
Jennifer argues in her appeal that no medical testimony was offered during the termination of parental rights hearing. This record contains overwhelming proof of the injuries suffered by D.B.A., namely the statement from Dr. O’Boyle confirming that this was the worst instance of sexual , abuse on an infant that she had ever seen. The trial court took notice of. the evidénce in the record proving the extensive injuries suffered by D.B.A. and also noted its concerns for the disturbing lack of action on Jennifer’s part in addressing D.B.A.’s condition given the serious nature of her injures. Jennifer’s testimony revealed several instances where Angelí demonstrated a propensity for violent behavior in response to D.B.A.’s crying and a complete lack of affection toward his child, yet Jen- ■ nifer |10continued to leave D.B.A. alone in Angell’s care, even when safer caretaker options were easily available to her.
After a thorough review of the record, we do not find manifést error in the trial court’s ruling that grounds for termination of parental rights were proved beyond clear and convincing evidence. Ultimately, it was reasonable for the trial court to find that terminating parental rights was in the best interest of D.B.A. under these facts in order to -provide her with - permanency, stability, safety, and security. This assignment -of error also lacks merit..
CONCLUSION
■ Considering the foregoing, we .affirm the trial court’s judgment terminating the parental rights of Jennifer Diane Slaton Henry as to her minor child, D.B.A. Costs of this appeal are assessed to Jennifer Henry.
AFFIRMED.