PARRO, J.
12The parents of a minor child, who was adjudicated a child in need of care, appeal that portion of the judgment of the juvenile court,[1] which found that efforts to *266 reunify the parents and the child were not required. For the reasons that follow, we affirm the judgment of the juvenile court.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On November 27, 2011, R.T.R. and C.M.B. became the biological parents of their second child, S.R.[2] On November 30, 2011, the State of Louisiana, through the Department of Children and Family Services (DCFS), obtained an oral instanter order removing S.R. from the custody of her parents and placing her in the custody of DCFS, because the mother, C.M.B., had tested positive at the time of the child’s delivery for benzodiazepines and opiates. S.R. was maintained in DCFS custody pursuant to a continued custody order signed by the juvenile court on December 27, 2011. In addition to S.R., R.T.R. and C.M.B. had another child, H.R., who was already in DCFS custody at the' time of S.R.’s birth and subsequent removal. According to the record, H.R. also had been removed from her parents’ custody pursuant to an initial valid finding that she was a drug-exposed newborn. After the parents failed to comply with the case plan established for them, a petition to terminate their parental rights as to H.R. was filed pursuant to LSA-Ch.C. arts. 1004 and 1015, and a hearing was scheduled for December 6, 2011. At this hearing,. R.T.R. and C.M.B. stipulated that all grounds for termination set forth in the petition were true and consented to judgment terminating |3their parental rights pursuant to LSA-Ch.C. art. 1025.2.[3] The judgment, signed on December 20, 2011, further certified that H.R. was free for adoption.
Thereafter, DCFS filed a motion for a judicial determination that efforts to reunify the parents and S.R. were not required, based on the ground that the parental rights of R.T.R. and C.M.B. to S.R.’s sibling, H.R., had been terminated involuntarily. R.T.R. and C.M.B. opposed the motion on the ground that the stipulation and consent to the judgment had transformed the prior involuntary termination proceedings concerning H.R. into a voluntary termination of their parental rights. The juvenile court requested memoranda of law on the issue and took the matter under advisement. The juvenile court subsequently concluded that the parental rights of R.T.R. and C.M.B. as to H.R. had been terminated involuntarily.[4] The juvenile court further determined that, because the parental rights of R.T.R. and C.M.B. had been so terminated, DCFS had demonstrated by clear and convincing evidence that reunification efforts were not required as to S.R., pursuant to LSA-Ch.C. art. 672.1(C)(4). Accordingly, the juvenile court ordered that the motion to dispense with reunification efforts filed by DCFS be granted.[5] The parents have appealed.
*267 DISCUSSION
The parents’ attorneys have filed a joint brief on appeal, stating that they believe there are no non-frivolous issues to raise on appeal and that no ruling of the juvenile court supports the appeal. Nevertheless, the brief does raise certain substantive arguments in favor of the appeal. In addition, the parents’ attorneys have filed a joint |¿motion to withdraw as attorneys of record in this matter.[6]
The sole issue before this court, as before the juvenile court, is whether the parents’ stipulation, in accordance with LSA-Ch.C. art. 1025.2, that the facts as alleged in the petition for involuntary termination were true, converted that involuntary termination proceeding into a voluntary termination of their parental rights. Such a conversion of the proceedings would prohibit DCFS from basing its motion to dispense with reunification efforts as to S.R. on the judgment terminating their parental rights as to H.R. This issue presents a question of law. Appellate review of questions of law is simply a review of whether the trial court was legally correct or legally incorrect. Lamz v. Wells, 05-1497 (La.App. 1st Cir.6/9/06), 938 So.2d 792, 795. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Id.
With respect to the motion to dispense with reunification efforts, before its amendment in 2012, Louisiana Children’s Code article 672.1 provided:
A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a motion for a judicial determination that efforts to reunify the parent and child are not required.
B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not required, considering the health and safety of the child and the child’s need for permanency.
C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:
(1) The parent has subjected the child to egregious conduct or conditions including, but not limited to, any of the grounds for certification for adoption pursuant to Article 1015.
(2) The parent has committed murder or manslaughter of another child of the parent or has aided or abetted, attempted, conspired, or solicited to commit such a murder or manslaughter.
(3) The parent has committed a felony that results in serious bodily injury to the child or another child of the parent.
(4) The parental rights of the parent to a sibling have been terminated involuntarily.
|r;D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency *268 hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted immediately and shall be conducted within thirty days after the determination.
As support for its motion to dispense with reunification efforts, DCFS relied solely on the allegation that the parental rights of R.T.R. and C.M.B. to H.R., the sibling of S.R., had previously been terminated involuntarily. See LSA-Ch.C. art. 672.1(C)(4).
The Louisiana Children’s Code establishes a distinction between involuntary termination of parental rights and the voluntary relinquishment of those rights. Louisiana Children’s Code article 1004 authorizes the filing of a petition for termination of parental rights by certain parties on any ground authorized by LSA-Ch.C. art. 1015. Articles 1004 and 1015 are found in Title X[7] of the Louisiana Children’s Code. The purpose of Title X is to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption. LSA-Ch.C. art. 1001. In all proceedings, the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proven. Id.
In contrast, Title XI of the Louisiana Children’s Code addresses the voluntary surrender of parental rights. Except as otherwise provided in Articles 1195 and 1196 of the Code,[8] Title XI provides the exclusive means by which a parent can voluntarily relinquish his or her parental rights to a child for the ultimate purpose of adoption. LSA-Ch.C. art. 1101.
In this matter, it is undisputed that a petition was filed pursuant to Articles 1004 and 1015, seeking to involuntarily terminate the parental rights of R.T.R. and C.M.B. as |fito H.R. in accordance with these articles. Once such a petition has been filed, the parent is thereafter without authority to execute an act of surrender or otherwise to affect the custody of the child, except: (1) the parent may execute an act of surrender in favor of the department with the approval of the court; or (2) the parent may consent to a judgment terminating his parental rights as provided in Article 1025.2.[9] LSA-Ch.C. art. 1030; see also LSA-Ch.C. art. 1025.1(B).
Articles 1030 and 1025.1 acknowledge the distinction between the two actions a parent may take to affect the custody of his or her child once a petition for termination of parental rights has been filed. In one scenario, the court may authorize a *269 parent to execute a voluntary act of surrender in favor of the department in accordance with LSA-Ch.C. art. 1122. See LSA-Ch.C. arts. 1025.1 and 1030. Article 1122 is found in Title XI of the Louisiana Children’s Code, which, as noted previously, provides the exclusive means by which a parent can voluntarily relinquish his or her parental rights to a child for the ultimate purpose of adoption.
In this matter, however, the court did not authorize the parents to execute a voluntary act of surrender. Rather, the court authorized the parents to stipulate that all grounds alleged in the petition for involuntary termination were true and to consent to the judgment terminating their parental rights in accordance with Article 1025.2, which provides:
The parent whose rights are sought to be terminated may stipulate that the grounds alleged in the petition are true provided that all of the following occur:
(1) He personally appears before the court. A parent who resides either in another parish or in another state may personally appear before the court exercising juvenile court jurisdiction in his place of residence.
(2) The court fully informs him of his rights and the consequences of such a stipulation.
|7(3) The parent knowingly and voluntarily consents to the judgment.
As a preliminary matter, we note that Article 1025.2, like Articles 1004 and 1015, is found in Title X of the Louisiana Children’s Code, which provides a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption. See LSA-Ch.C. art. 1001. Clearly, therefore, Article 1025.2 does not provide a procedure by which a parent may voluntarily relinquish his or her child for the purpose of adoption within the structure established by the Louisiana Children’s Code. Rather, it is part of an involuntary procedure established to protect children whose parents are unwilling or unable to provide for their needs. See LSA-Ch.C. art. 1001; see also LSA-Ch.C. art. 1015. Because the juvenile court chose to authorize termination of the parents’ rights pursuant to Article 1025.2, rather than Article 1122, it is clear that it chose to proceed through the involuntary termination procedure available to it, rather than to allow the parents to voluntarily surrender or terminate their parental rights.
The parents further contend that, because Article 1025.2 requires parents to “knowingly and voluntarily” consent to the judgment terminating their rights, their parental rights could not have been involuntarily terminated. This argument is without merit.
Article 1025.2 is triggered by the desire of the parent to stipulate that the grounds alleged in the petition seeking to involuntarily terminate his or her parental rights are true. Prior to accepting the stipulation, the juvenile court must fully inform the parent of his or her rights and the consequences of such a stipulation, so that the parent can make a knowing and voluntary decision as to whether to consent to the judgment. If viewed in this context, the issue of whether the consent to the judgment is “voluntary” is simply whether such consent has been given freely and has not been coerced. Clearly, therefore, the nature of the proceeding, from an involuntary proceeding that seeks to terminate the parental rights of individuals who have acknowledged that they have caused some harm to their child, is not changed by this consent. Accordingly, the parental rights of R.T.R. and C.M.B. as to H.R. were | ^involuntarily terminated by judgment dated December 20, 2011, *270 and DCFS properly relied on that judgment in its motion to dispense with reunification efforts as to S.R.[10]
CONCLUSION
For the foregoing reasons, we affirm the judgment of the juvenile court, which found that efforts to reunify the parents and the child were not required. All costs of this appeal are assessed to the parents, R.T.R. and C.M.B.
AFFIRMED; MOTION TO WITHDRAW GRANTED.

. The City Court of Slidell exercises original juvenile jurisdiction for its territorial jurisdiction pursuant to LSA-Ch.C. art. 302(4). This jurisdiction is concurrent with that of the district court. LSA-Ch.Ch. art. 302(4). As a court exercising juvenile jurisdiction, it has exclusive original juvenile jurisdiction, in conformity with any special rules prescribed by law, over any child alleged to be in need of *266 care and die parents of any such child, LSA-Ch.C. art. 604.

.The children and their parents are referred to by their initials to preserve their anonymity in this confidential proceeding. The father and mother are referred to as R.T.R. and C.M.B. respectively. The underlying proceedings in this matter and the judgment appealed to this court directly involve only the minor child, S.R.; nevertheless, earlier proceedings involving her sister, H.R., are relevant to this matter.

. The petition to terminate parental rights as to H.R. is not in the record; therefore, the specific allegations of that petition are not known. However, the judgment terminating parental rights as to H.R. and certifying her for adoption was introduced into the record before this court.

. In so concluding, the juvenile court adopted the memorandum of law of DCFS as its written reasons.

. At the same hearing, the juvenile court also addressed the issue of the adjudication of S.R. *267 as a child in need of care. The parents chose to stipulate to the allegations, without admission; therefore, the judgment also adjudicated S.R. as a child in need of care. The minute entry for the hearing also notes that the court approved the case plan from DCFS and placement in a foster home, pending approval of the maternal grandmother’s home in Mississippi, pursuant to the Interstate Compact on the Placement of Children, These parts of the court’s ruling have not been appealed,

. The attorneys for the parents have filed this appeal in accordance with Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241.

. Titíe X addresses the judicial certification of children for adoption.

. Article 1195 provides that any parent may give consent to the adoption of his child in open court. Article 1196 authorizes an alleged or adjudicated father to execute an authentic act of consent to the adoption of his child, which releases any real or potential claims to the child, and such consent shall not be evidence of a confession, admission, or acknowledgment of paternity in any proceeding.

. At the time of the filing of the petition for termination of parental rights in this matter, LSA-Ch.C. art. 1030 provided that the parent "may consent to a judgment terminating his parental rights as provided in Article 1033.” The 1997 comments to Article 1025.2 indicate that it was a repositioning of former Article 1033, with certain modifications not relevant here. Furthermore, 2012 La. Acts, No. 730, § 1, amended Article 1030 to remove and correct the reference to Article 1033 so that Article 1030 now refers to Article 1025.2. Accordingly, it appears that the reference to Article 1033 in Article 1030 was merely a remnant of the prior law.

. The attorneys for the parents have filed a joint motion to withdraw as attorneys of record in this matter, which we now grant.