GUIDRY, J.
Parents, whose parental rights were terminated, filed this appeal to challenge the trial court's determination that the State of Louisiana, through the Department of Children and Family Services (DCFS), was not required to attempt to reunify the parents with their children prior to terminating their parental rights.
*318 FACTS AND PROCEDURAL HISTORY
On June 13, 2015, J.F.[1] gave birth to M.F. At the time of M.F.'s birth, J.F. tested positive for cocaine, THC, opiates, and benzodiazepines. M.F. was found to be a drug affected newborn when a subsequent test revealed benzodiazepines in his urine. As a result of M.F.'s drug exposure, DCFS sought and was issued an instanter order to have M.F. placed in DCFS's custody pending further investigation and proceedings. The Seventeenth Judicial District Attorney's Office (DA) later filed a petition seeking to have M.F. adjudicated a child in need of care (CINC petition). Following an answer hearing, during which the court found that the allegations of the petition had been proven by a preponderance of the evidence, the trial court adjudicated M.F. a child in need of care.
On September 3, 2015, the DA amended the CINC petition to identify M.N. as the father of M.F. As M.N. did not participate in the prior answer hearing, a second answer hearing was held at which both J.F. and M.N. appeared. Following the second answer hearing, the trial court again rendered judgment adjudicating M.F. a child in need of care.
Five months after M.F. came into state custody, DCFS sought and was issued an instanter order to have M.F.'s older sibling, K.N., placed in its custody. M.N. was the legal custodian of K.N. at the time DCFS obtained custody of K.N. pursuant to the instanter order. The instanter order placing K.N. in DCFS's custody was issued based on J.F. testing positive in drug screens, J.F. attending parenting classes while under the influence of drugs, and M.N. admitting that he left K.N. in the care of J.F. when he was absent from home for work.[2] The DA later filed a CINC petition to have K.N. adjudicated a child in need of care based on the same grounds, noting in particular that the parenting classes at which J.F. appeared under the influence of drugs were the ones she was required to attend as part of her case plan[3] for M.F. The petition also referenced the fact that J.F. failed a hair follicle drug screen conducted by DCFS on October 9, 2015, when she tested positive for amphetamines, cocaine, methamphetamines, and opiates, and that she failed a urine drug screen ordered by the trial court on October 17, 2015, when she again tested positive for amphetamines, cocaine, methamphetamines, and opiates. At the *319 answer hearing to the CINC petition for K.N., M.N. and J.F. stipulated to K.N. being adjudicated a child in need of care without admitting to the allegations of the petition.
Roughly six months after K.N. came into state custody, DCFS filed a petition seeking to terminate the parental rights of J.F. and M.N. to M.F. and K.N., alleging that J.F. and M.N.'s "parental rights to four siblings of [K.N. and M.F.] were terminated due to neglect or abuse and prior attempts to rehabilitate the parents have been unsuccessful. Despite intervention by the agency, the parents did not rehabilitate." See La. Ch.C. art. 1015(4)(k).[4] Although only a single petition was filed seeking to terminate both parents' parental rights to the children, on August 10, 2016, DCFS made an oral motion in open court (as prompted by the trial court and to which counsel for K.N. and M.F. agreed and counsel for J.F. and M.N. did not object) to consolidate the actions to terminate the parental rights of J.F. and M.N. to K.N. and M.F. Thus, the actions were consolidated.[5]
A hearing on termination of the parental rights of J.F. and M.N. was held on November 14, 2016. Following the hearing, the trial court ordered the parties to file post-trial briefs and took the matter under advisement. The trial court later rendered judgment terminating the parental rights of J.F. and M.N. to K.N. and M.F., based on both parents failing to comply with their case plans-J.F. due to testing positive on drug tests and M.N. due to his work schedule. The court made particular note of its disagreement with M.N.'s belief that it was appropriate and acceptable to leave the children in the care of J.F. during his extended absences from home for work.
Additionally, the court found that the parental rights of J.F. and M.N. had been terminated to one or more of the children's siblings due to neglect or abuse, that prior attempts to rehabilitate them had been unsuccessful, and that current attempts to reunite the children with their parents were not required pursuant to La. Ch.C. art. 672.1. Thus, considering that the children had been consistently maintained for a significant period of time in the same foster home, which family was willing to adopt both children, the court found it in the best interest of the children to terminate the parental rights of J.F. and M.N. An amended judgment terminating the parental rights of J.F. and M.N. was signed by the trial court on February 14, 2017,[6] *320 which both J.F. and M.N. have separately appealed.
DISCUSSION
In every involuntary termination of parental rights case, there are two private interests involved: those of the parents and those of the child. State ex rel. H.A.B., 10-1111, p. 28 (La. 10/19/10), 49 So.3d 345, 366. While a parent's interests undeniably warrant deference, that deference and protection should always bow to the child's countervailing interests, which are deemed to be superior and paramount. See H.A.B., 10-1111 at p. 29, 49 So.3d at 366. Louisiana Children's Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. In order to terminate a person's parental rights, the court must find the State has established at least one of the statutory grounds contained in Article 1015 by clear and convincing evidence. See La. Ch.C. art. 1035(A). Notwithstanding, even upon finding the State has met its evidentiary burden, a court still should not terminate parental rights unless it determines to do so is in the child's best interest. La. Ch.C. art. 1037(B). Whether termination of parental rights is warranted is a question of fact, and a trial court's factual determinations will not be set aside in the absence of manifest error. H.A.B., 10-1111 at p. 31, 49 So.3d at 368.
In this case, the trial court terminated the parental rights of J.F. and M.N. to M.F. and K.N. pursuant to La. Ch.C. art. 1015(4)(k), which provides the following basis for the termination of parental rights:
(4) Misconduct of the parent toward this child or any other child of the parent or any other child which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
...
(k) The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse, prior attempts to rehabilitate the parent have been unsuccessful, and the court has determined pursuant to Article 672.1, that current attempts to reunite the family are not required.
On appeal, both J.F. and M.N. acknowledge that three conditions are required to be met in order for a person's parental rights to be terminated under Article 1015(4)(k) ; however, in their briefs to this court, J.F. asserts that the evidence in the record is insufficient to establish the third condition of Article 1015(4)(k), whereas M.N. asserts that, at least as to him, DCFS failed to prove any of conditions recited in Article 1015(4)(k). Accordingly, we will review the record relative to each condition.
Condition 1: The parent's rights to one or more of the child's siblings have been terminated due to neglect or abuse.
As to this condition, M.N. acknowledges that DCFS introduced a copy of the judgment terminating his parental rights, and he does not dispute the fact that his parental rights to the siblings of M.F. and K.N. were terminated. Instead, he argues that the evidence presented fails to establish that his parental rights were terminated due to neglect or abuse. In particular, he points out that the prior termination judgment "does not provide specific findings of fact, nor does it specify why the parental rights of M.N. were terminated as to his other children. M.N. further argues in brief that:
*321 Alexis Johnson, case worker for the Department of Children and Family Services, testified that the previous case was similar to the present case in that M.N.'s work schedule prevented him from completing his case plan. Ms. Johnson offered no testimony regarding M.N.'s neglect or abuse of his older children. When asked whether there have been allegations of neglect or abuse, she answered "no," as it pertains to M.N. [Footnotes omitted.]
Ms. Johnson testified that although she was not involved in the prior case, she found the prior case to be similar to the present case involving M.F. and K.N. based on her review of the record from the prior case. In particular, she mentioned that M.N. missed visits with the children due to work. As she explained, M.N. was not available as a caretaker for M.F. and K.N. because he works on the boat a lot. She said the same problem existed in the prior case.
The record from the prior case (consisting of minute entries, pleadings, hearing notices, case plans, reports from the Court-Appointed Special Advocate (CASA)[7] and DCFS, as well as orders and judgments issued by the trial court) was introduced into evidence in the proceedings below. That prior record reveals that on December 7, 2016, an instanter order was issued placing four of M.F. and K.N.'s older siblings (A.N., Mi.N., P.N., and M.K.F.) into DCFS[8] custody as a result of J.F. being arrested on December 2, 2006, for driving while under the influence (DUI) of drugs with the four children riding unrestrained in the vehicle. On December 4, 2007, the children were returned to the custody of J.F. and M.N., subject to supervision by DCFS for a period of six months. But on February 12, 2008, J.F. was arrested for her fifth DUI. In that incident, she again had all of her children in the vehicle, including her son M.D.F., who was born in May 2007. As a result of that incident, all of the children, including M.D.F., were placed in the custody of DCFS.
On April 27, 2010, DCFS filed a petition to terminate the parental rights J.F. and M.N. to A.N., P.N., M.K.F., and M.D.F.,[9] under Article 1015, sections (3), (4), and/or (5).[10] In the petition, DCFS alleged M.N.
*322 had abandoned his children by leaving them under circumstances that demonstrated an intention to permanently avoid responsibility by failing to provide significant contributions to the children's care and support for six consecutive months and failing to comply with or complete his case plan. In particular, DCFS alleged that at the time of the filing of the petition, M.N.'s whereabouts were unknown and that M.N. failed to update the agency as to his whereabouts, which was a barrier to his providing for the ongoing daily need for safe and stable housing for his children.
Separate hearings were eventually held to terminate the parental rights of J.F. and M.N. to the four children. At a hearing held on July 2, 2010, J.F. consented to the judgment terminating her parental rights in accordance with Article 1015. The hearing to terminate M.N.'s parental rights was held on August 16, 2010, but according to the minute entry[11] for that hearing, M.N., who was represented by private counsel, waived his appearance. The minute entry recites that evidence was offered by DCFS, and specifically notes that a DCFS case manager testified at the hearing. However, no evidence was offered in M.N.'s defense, and his parental rights were terminated.
Thus, while the August 17, 2010 judgment does not expressly recite that M.N.'s parental rights were terminated due to neglect or abuse, the prior record submitted to the trial court in the instant matter clearly establishes that M.N.'s habitual absences from the home, for work or otherwise,[12] while leaving the children in J.F.'s care, as well as his failure to pay any substantial financial support for the children, were acts of neglect. Moreover, such was expressly alleged in the petition seeking to terminate M.N.'s parental rights.[13]
*323 Finally, M.N.'s frequent absences, failure to pay child support, and failure to complete his case plan was amply documented by DCFS, a representative of which testified at M.N.'s termination hearing. Thus, we find no manifest error in the trial court's determination that M.N.'s parental rights to the siblings of M.F. and K.N. (A.N., P.N., M.K.F., and M.D.F.) were terminated due to neglect.
Condition 2: Prior attempts to rehabilitate the parents have been unsuccessful.
Likewise, we find no manifest error in the trial court's determination that prior attempts to rehabilitate were unsuccessful. Just as in the prior proceedings, in the instant matter, M.N.'s case plan required his participation in counseling classes and to be a caretaker in the home; however, due to M.N.'s work schedule, he was not available for either. At the termination hearing, Ms. Johnson stated that DCFS does not expect someone to quit his or her job, but it does expect a parent to be available when there is a need for that parent in the home, and M.N. was not. She said the same problem existed in the prior case. She also stated that M.N. failed to maintain contact with DCFS and that he did not participate in the parenting classes he was required to attend as part of his case plan because the coordinators of the classes "couldn't contact him because he was working."
M.N., himself, acknowledged that he had been informed that there were things he needed to do to get his other children back, but he said due to the fact that he was a fisherman, "I do not have the time and the energy to be at home and proceed with all the requirements of what they have asked me to do." And regarding leaving the children in J.F.'s care, despite knowing there had been multiple drugs tests showing that J.F. was using drugs illegally, M.N. stated:
I don't know what the office of child welfare sees in my girlfriend. But as far as I can see-living with her and seeing her taking care of the children-the way I see it, I don't understand the reason behind it because she is an outstanding mother, outstanding, taking care of our kids, taking care of the house. And I don't know what the State is looking at, what they are looking at with my girlfriend.
...
I work-I do understand I work a lot. And I fully understand also the fact that I have a wonderful mother of my children at home taking care of them that I don't see no danger with the children living with her.
Hence, the evidence in the record before us amply supports the trial court's determination that prior attempts to rehabilitate have been unsuccessful, and thus, we find no manifest error in the trial court's determination.
Condition 3: The court has determined, pursuant to Article 672.1, that current attempts to reunite the family are not required.
Next, we must consider whether the trial court properly applied La. Ch.C. art. 672.1 to decree that the parental rights of J.F. and M.N. should be terminated. That statute provides:
A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a motion for a judicial determination that efforts to reunify the parent and child are not required.
B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not required, considering the *324 health and safety of the child and the child's need for permanency.
C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:
(1) The parent has subjected the child to egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015.
(2) The parent has committed murder or manslaughter of another child of the parent or any other child or has aided or abetted, attempted, conspired, or solicited to commit such a murder or manslaughter.
(3) The parent has committed a felony that results in serious bodily injury to the child or another child of the parent or any other child.
(4) The parental rights of the parent to a sibling have been terminated involuntarily.
D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted
immediately and shall be conducted within thirty days after the determination. [Emphasis added.]
The language of Article 672.1(A) is permissive, and jurisprudence has recognized, that it is not mandatory that DCFS file a motion for a judicial determination that efforts to reunify the child and parent are not required; rather, the statute allows DCFS discretion to seek such a determination if it so desires. SeeState in the Interest of M.B., 12-547, p. 10 (La. App. 5th Cir. 1/30/13), 108 So.3d 1237, 1243 ; State ex rel. H.M. v. T.M., 44,446, p. 7 (La. App. 2d Cir. 5/6/09), 12 So.3d 409, 414. As recognized in annotations to the statute, such a motion may be warranted in circumstances where "reunification is likely to be a futile exercise, further damaging the child," such as "when the parent has committed a felony assault causing serious bodily injury to the child or sibling; committed or attempted murder or voluntary manslaughter of a sibling; aggravated circumstances including abandonment, torture, chronic abuse or sexual abuse; or if the parental rights to a sibling have been terminated involuntarily." See La. Ch.C. art. 672.1, 1999 Comments.
However, in the instant case, rather than seeking such a determination by the trial court, the record reveals that DCFS engaged in reunification efforts. Therefore, the record demonstrates that it was not the goal of DCFS to be allowed to dispense with reunification efforts. Instead, DCFS changed course to proceed under Article 1015 to terminate the parental rights of J.F. and M.N. with the goal of adoption only after J.F. and M.N. failed to comply with their case plans. As such, we find the trial court correctly determined that DCFS was not required to file a motion seeking a judicial determination that reunification efforts were not required. See State ex rel. R.L.T. and S.A.T., 45,168, p. 6 (La. App. 2d Cir. 1/27/10), 30 So.3d 1085, 1089.
We further find that the trial court correctly determined that it was not precluded, in the absence of a motion by DCFS, from nevertheless determining that reunification efforts were not required pursuant Article 672.1, as Article 1015(4)(k) plainly directs the court to make such a determination. Notably, Article 1015(4)(k) does not direct DCFS to file a motion seeking a reunification determination under Article 672.1, but instead, simply directs the court to make the determination. The grounds for determining that reunification efforts are not required are *325 found in subsection (C) of Article 672.1. As previously discussed herein, the record clearly establishes that the parental rights of J.F. and M.N. to four of M.F. and K.N.'s siblings were terminated involuntarily,[14] which supports the determination that reunification efforts were not required pursuant to Article 672.1(C)(4). Hence, we find no error in the trial court's determination that reunification efforts were not required in fulfillment of the third condition of Article 1015(4)(k).
Finally, while not assigned as error, M.N. does briefly argue on appeal that the trial court incorrectly found that it would be in the best interest of the children to terminate his parental rights. In support of this argument, M.N. erroneously asserts that DCFS did not present any evidence of the familial ties between M.N. and his children. Ms. Johnson testified that M.N. was not available to visit with his children in person, but would participate in scheduled visitation through telephone calls. As previously discussed, M.F. was taken into DCFS custody at birth, and K.N. entered DCFS custody roughly five months later. During the time preceding termination of his parental rights, the DCFS reports that appear in the record indicate that M.N. attended only one family visit. More importantly, as recognized by the trial court in its reasons for judgment, the children had been together in the same foster home for a significant period of time, the foster placement had been beneficial to the children's development, and the foster family was willing to adopt the children together. The record, particularly the reports from CASA and DCFS contained in the record, support these findings by the trial court. Accordingly, we find the trial court was not clearly wrong in finding that it was in the best interest of the children to terminate the parental rights of J.F. and M.N.
CONCLUSION
Hence, after carefully and thoroughly considering the record before us and applying the applicable law, we affirm the judgment of the trial court terminating the parental rights of J.F. and M.N. to M.F. and K.N. All costs of this appeal are cast to the appellants, J.F. and M.N.
AFFIRMED.

The children and their parents are referred to by their initials to preserve their anonymity in this confidential proceeding. See La. Ch. C. art. 1007(A). The father is referred to as M.N. and the mother J.F. The underlying proceedings and the judgment appealed involve the minor children, M.F. and K.N.; however, earlier proceedings involving their siblings A.N., Mi.N., P.N., M.K.F. and M.D.F., are relevant to this matter.

M.N. worked on a boat as fisherman, and in that occupation, he would be away from home twenty days at a time.

According to the Louisiana Children's Code, a case plan detailing what efforts will be made by DCFS toward achieving a permanent placement of a child must be developed within sixty days of a child entering DCFS's custody and must include, among other things, a provision for services to the parents to assist parents in removing the obstacles of reunification, at least as long as the child's permanent plan is reunification. See La. Ch. C. arts. 673 and 675(B)(2) ; State in Interest of D.B.A., 50,412, p. 7 (La. App. 2d Cir. 2/24/16), 190 So.3d 316, 321. An initial case plan, dated August 24, 2015 (when DCFS only had custody of M.F.), provided a goal of reunification with a concurrent plan of adoption. The next case plan, dated November 23, 2015, at which time DCFS had custody of M.F. and K.N., maintained a goal of reunification with a concurrent plan of adoption. However, in the case plan dated February 4, 2016, the goal for both children was changed to simply adoption.

Article 1015 of the Louisiana Children's Code was amended in 2016, after the petition for termination was filed, which amendment, in part, resulted in the renumbering of La. Ch.C. art. 1015(3)(k) to La. Ch.C. art. 1015(4)(k). See 2016 La. Acts, No. 608, § 1. The petition to terminate the parental rights of J.F. and M.N. cited to the former numbering of the article. As no other change was made to the provision at issue, and since the parties refer to the current numbering of the provision in their briefs, we will refer to the provision as La. Ch.C. art. 1015(4)(k) in our discussion herein.

See La. C.C.P. art. 1561.

The record contains an original judgment signed by the trial court on February 7, 2015, as well as the amended judgment, signed on February 14, 2017, in which the only difference appears to be the addition of the underlined text in the following sentence quoted from the amended judgment: "The court specifically rules that a 672.1 hearing was not necessary prior to the termination hearing and hereby makes a 672.1 ruling that efforts to reunify the parents are not required by the department."
Although the record contains no explanation of what prompted the amendment of the February 7, 2017 judgment, we recognize that a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance. See La. C.C.P. art. 1951.

See La. Ch.C. arts. 424, 424.1, 424.3, and 424.7.

At that time, DCFS was referred to as the Office of Community Services within the Louisiana Department of Social Services; however, pursuant to 2010 La. Acts, No. 877, § 3, the Louisiana Legislature directed the Louisiana Law Institute "to change all references to the 'Department of Social Services' to the 'Department of Children and Family Services' and all references to either the 'office of community services' or 'the office of family support' to the 'office of children and family services' throughout the Louisiana Revised Statutes of 1950." Although this change was not made effective until July 1, 2010, for ease of discussion and understanding, we shall simply refer to the agency as DCFS in our discussion of the prior proceedings.

An August 30, 2007 CASA report contained in the prior record reveals that M.N. was not the biological father of Mi.N. MiN's father was eventually identified by DCFS. Mi.N.'s father later made contact with DCFS in May 2008, and ultimately obtained full legal custody of Mi.N.

At that time, the identified sections of Article 1015 provided, in pertinent part:
The grounds for termination of parental rights are:
(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
...
(i) Abuse or neglect which is chronic, life threatening, or results in gravely disabling physical or psychological injury or disfigurement.
(j) Abuse or neglect after the child is returned to the parent's care and custody while under department supervision, when the child had previously been removed for his safety from the parent pursuant to a disposition judgment in a child in need of care proceeding.
...
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
...
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
...
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

There are no transcripts of any proceedings contained in the prior record.

The prior record reveals that on at least two occasions, M.N. went to Vietnam and stayed for months before returning.

So long as the facts constituting the claim or defense have been alleged and proved, the party may be granted any relief to which he is entitled under the fact pleadings and evidence, when the due process requirement of adequate notice to the parties of the matters to be adjudicated has been satisfied. Miller v. Thibeaux, 14-1107, p. 8 (La. 1/28/15), 159 So.3d 426, 432.

The fact that J.F. consented to the judgment terminating her parental rights to M.F. and K.N.'s siblings does not change the nature of the proceedings from being "involuntary." See State in the Interest of S.R., 12-0812 (La. App. 1st Cir. 12/31/12), 112 So.3d 264.