STATE OF LOUISIANA IN THE INTEREST OF G.K. & B.K.

\*

\*

\*

\*

NO. 2024-CA-0163

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 28-046-J  C\W 23-321-J, DIVISION "A"
Honorable William M McGoey, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)
**JENKINS, J., DISSENTS WITH REASONS**

Jane Hogan
ATTORNEY AT LAW
310 N. Cherry Street, Suite 1
Hammond, LA 70401


          COUNSEL FOR APPELLANTS


Mary M. Mcmillan
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras Street, Suite 600
New Orleans, LA 70112

Katherine M. Dowling
DEPARTMENT OF CHILDREN & FAMILY SERVICES
Bureau of General Counsel
1450 Poydras Street, Suite 1600
New Orleans, LA 70112

Chimene St. Amant
LOUISIANA DEPARTMENT OF JUSTICE
P. O. Box 94005
Baton Rouge, LA 70804

David Jeddie Smith, Jr.
LOUISIANA DEPARTMENT OF JUSTICE
P.O. Box 94005
Baton Rouge, LA 70804-9005

Elizabeth Baker Murrill
ATTORNEY GENERAL
Louisiana Department of Justice
Litigation Division
1885 North Third Street, 3rd Floor
Baton Rouge, LA 70802

      COUNSEL FOR APPELLEE

**AFFIRMED**
**JUNE 26, 2024**

This appeal stems from an involuntary termination of parental rights. Appellants, A.S. and J.K., Sr., (collectively, the "Parents") appeal the juvenile court's February 6, 2024 judgment, which terminated the Parents' parental rights to J.K., Jr.  In that judgment, the juvenile court found that the State of Louisiana (the "State"), through the Department of Child and Family Services ("DCFS"), was not required to attempt reunification efforts between the Parents and their child because the Parents' parental rights to other children had previously been involuntarily terminated.  For the reasons that follow, we affirm the juvenile court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2023, DCFS received a report alleging that the Parents brought their two-year-old son, J.K., Jr., to Children's Hospital for seizure-like activity.  While hospitalized, J.K., Jr. stopped breathing and had to be intubated. J.K., Jr.'s urine tested positive for cocaine.

On February 3, 2023, the juvenile court issued an Instanter Order to have J.K., Jr. removed from the Parents' custody and placed in DCFS' provisional custody.  Before DCFS arrived at the hospital to take physical custody of J.K., Jr.,

1

the Parents removed him from the hospital and travelled to Mississippi. On February 7, 2023, the juvenile court held a continued custody hearing, and DCFS was granted continued custody. The Parents were later arrested, on April 4, 2023, in Mississippi on charges of kidnapping and obstruction of justice. Thereafter, DCFS placed J.K., Jr. in the same certified foster home of his two older siblings' adoptive parents.

An adjudication and disposition hearing was held on April 12, 2023. At that hearing, the parties stipulated that J.K., Jr. was a child in need of care. On July 7, 2023, DCFS moved for a judicial determination that reasonable efforts of reunification were not required pursuant to La. Ch.C. art. 672.1 ("Article 672.1 Motion"), on the basis that the parental rights of the Parents to J.K., Jr.'s older siblings had been terminated involuntarily.[1] Following the August 23, 2023 hearing, the juvenile court granted DCFS' Article 672.1 Motion and issued a written judgment on September 27, 2023.

Counsel for the Parents jointly moved for review or status hearing on September 13, 2023, to consider DCFS' statutory duty to seek out and consider relative placement. A hearing was held on September 27, 2023, and at the conclusion of the hearing, the juvenile court denied the motion to place J.K., Jr. in custody with relatives. The Parents appealed the ruling and this Court affirmed the judgment. *See State in Interest of G.,* 23-0744 (La. App. 4 Cir. 2/23/24), 384 So.3d 1039.

---

[1] *See* Glenda Morris Rothberg, Foster Care & Adoption Reform Legislation: Implementing the Adoption and Safe Families Act of 1997, 14 ST. JOHN'S J., Legal Comment. 427, 429-31 (2000) (observing "there are certain situations [including involuntary termination of rights to a sibling] in which foster care agencies can move courts for a judicial determination that reasonable efforts to work with certain parents are not required. As soon as this occurs, the case is on a sort of the fast track toward the termination of parental rights" and that "a prior termination of parental rights can be brought as grounds for currently excusing the agency from working with the parent for the return of another child").

On September 22, 2023, DCFS filed a Petition for Termination of Parental Rights (the "Petition"), seeking to terminate the rights of the Parents. The termination hearing was held on November 29, 2023. DCFS case worker, Ankaya Cola ("Ms. Cola"), and the Parents testified at that hearing.

Ms. Cola testified that the State gained custody of J.K., Jr. in January 2023 and received physical custody on April 4, 2023. She further testified that DCFS was previously involved with the family when the Parents' parental rights were involuntarily terminated for their two daughters based on—what she believed to be—their failure to rehabilitate. She relayed that during the Parents' first termination proceeding they were unable to work a case plan because they were incarcerated. Ms. Cola continued that DCFS created a case plan for each parent; however, the jails in which they were incarcerated did not have any programs for the Parents to participate in their case plans.

J.K., Sr., testified that his parental rights were terminated as to G.K. and B.K., and in that case he worked a case plan until he was arrested and then sentenced to six years in prison. He further testified that he was unable to contribute to G.K. and B.K.'s care due to his incarceration.

A.S. testified that G.K. and B.K. went into DCFS' care in 2015, and she was incarcerated in 2016. She said that she contributed to her daughters' care until she went to jail. A.S. relayed that she was incarcerated due to her relapse with heroin use, and that she served a five-year sentence.

After the conclusion of the hearing, the juvenile court ordered the parties to file post-trial briefs and took the matter under advisement. On February 6, 2024, the juvenile court issued its judgment terminating the parental rights of the Parents and certifying J.K., Jr., eligible for adoption. In its reasons for judgment, the

juvenile court found: (1) that it had previously granted the DCFS' Article 672.1 Motion and determined that current attempts to reunify the child were not required; (2) that J.K., Jr.'s attorney and the DCFS proved that Parents' rights to J.K., Jr.'s siblings were involuntarily terminated and that prior rehabilitation efforts were unsuccessful; (3) that J.K., Jr.'s best interests were served by terminating Parents' rights; and (4) that La. Ch.C. art. 1015(3)(k) conforms with the requirements of due process, and therefore comports with the Louisiana and Federal constitutions.

This timely appeal followed.

## DISCUSSION

The crux of the Parents' argument on appeal is twofold. First, the Parents argue that juvenile court erred when it invoked La. Ch.C. arts. 672.1 and 1015(3)(k)—which are in essence a fast-track procedure to terminate parental rights when Parents' parental rights to other children have been involuntarily terminated. Secondly, the Parents contend that the juvenile court erred in finding that this fast-track procedure is constitutional. Before we address the merits of the Parents' assigned errors, we will set forth the standard of review and burden of proof in a petition to terminate parental rights.

### Standard of review

"This Court reviews a [district] court's finding on the termination of parental rights under a manifest error standard." *State in Interest of J.V.I.*, 23-0557, p. 4 (La. App. 4 Cir. 11/13/23), 377 So.3d 408, 412 (citing *State in the Interest of A.S.*, 17-0028, p. 4 (La. App. 4 Cir. 5/10/17), 220 So.3d 179, 183). "This Court reviews 'both prongs of the [district] court's determination—whether the statutory grounds for termination have been established and whether termination of parental rights is in the best interest of the child—under the manifest error standard.'" *Id.* (quoting

4

*State in the Interest of E.R.*, 22-0754, p. 4 (La. App. 4 Cir. 2/7/23), 357 So.3d 892, 895, *writ denied*, 23-00346 (La. 4/12/23), 359 So.3d 24).

### *Burden of proof*

The termination of the legal relationship existing between a parent and child "is one of the most drastic actions the state can take against its citizens." *State in Interest of J.V.I.*, 23-0557, p. 8, 377 So.3d at 414 (citing *State in Interest of A.L.D.*, 18-1271, p. 4 (La. 1/30/19), 263 So.3d 860, 863). The fundamental purpose in instituting the involuntary termination of parental rights is to protect a child whose parents are unwilling or unable to provide adequate care for the child's welfare and needs and to achieve stability and permanence for the child. *See* La. Ch.C. art. 1001.

DCFS may pursue termination of parental rights pursuant to La. Ch.C. art. 1004, which provides in relevant part:

> The department may petition for the termination of parental rights of the parent of the child when any of the following apply:
>
> (2) The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful, and termination is authorized by Article 1015(4)(k).[2]

"The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." La. Ch.C. art. 1035(A). The petition filed must allege at least one of the statutory grounds for involuntary termination of parental rights provided in La. Ch.C. art. 1015. A judicial determination of a termination of parental rights involves a two-pronged inquiry. The district court must find that (1) DCFS established each element of at

---

[2] Louisiana Children's Code Article 1004 does not reflect the amendment of Article 1015; however, the Children's Code continues to be revised. *See* 2024 La. Sess. Law Serv. Act 92 (S.B. 39) (WEST).

least one statutory ground for termination by clear and convincing evidence; and (2) after the district court finds that a ground for termination exists, the district court must determine that termination is in the best interest of the child. *See State in Interest of E.R.*, 22-0754, p. 6, 357 So.3d at 896. We now turn to the merits of this appeal.

### *Termination of the Parents' parental rights to J.K., Jr.*

DCFS filed the Petition pursuant to La. Ch.C. art. 1015(3)(k). In the petition, DCFS alleged that the Parents were incarcerated at St. Bernard Parish jail and that the misconduct of the Parents toward J.K., Jr. constituted extreme abuse, cruel and inhumane treatment, and/or grossly negligent behavior. DCFS further alleged:

> i. The [P]arents, [A.S.] and [J.K., Sr.], have had their rights to [G.K.] . . . and [B.K.] . . . ., siblings of the child herein, terminated due to abuse or neglect, in Case No. 23-231-J, in the Thirty-Fourth Judicial Court, Parish of St. Bernard, prior attempts to rehabilitate the [P]arents have been unsuccessful and the Court has determined pursuant to Article 672.1, that current attempts to reunite the family are not required.

Louisiana Children's Code Article 672.1, in pertinent part, provides:[3]

> A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a motion for a judicial determination that efforts to reunify the parent and child are not required.
>
> B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not required, considering the health, welfare, and safety of the child and the child's need for permanency.

---

[3] As one court has observed, the annotations to this statute state that "such a motion may be warranted in circumstances where 'reunification is likely to be a futile exercise, further damaging the child,' such as . . . 'if the parental rights to a sibling have been terminated involuntarily.'" *State in Interest of M.F.*, 17-0545, p. 13 (La. App. 1 Cir. 12/21/17), 241 So.3d 316, 324 (quoting La. Ch. C. art. 672.1, 1999 Comments).

C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:

\* \* \*

(4) The parental rights of the parent to a sibling have been terminated involuntarily.

D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing, which considers in-state and out-of-state permanent placement options for the child, may be conducted immediately and shall be conducted within thirty days after the determination.

Pursuant to La. Ch.C. art. 1015(3)(k), three conditions must be satisfied for the termination of parental rights: (1) the parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse; (2) prior attempts to rehabilitate the parent have been unsuccessful; and (3) the court has determined, pursuant to La. Ch.C. art. 672.1, that current attempts to reunite the family are not required.[4] Because resolution of this appeal turns on whether the juvenile court manifestly erred in applying the fast-track procedure to terminate the Parents' parental rights, we must examine the conditions that are required to be satisfied as set forth in La. Ch.C. art. 1015(3)(k).

*Condition One: The parent's rights to one or more of the child's siblings have been terminated due to neglect or abuse.*

It is undisputed that the Parents' parental rights were terminated as to J.K., Jr.'s siblings, G.K. and B.K. DCFS introduced a copy of the February 21, 2017

---

[4] The Official Comments to article 1015 provide background for subsection (3)(k):

These revisions bring Louisiana into compliance with federal requirements. Federal law requires that the state department need not attempt to preserve or reunify a family when the parent has subjected the child to "aggravated circumstances." Those circumstances include (but are expressly not limited to) proof that . . . the parental rights of the parent to a sibling have been terminated involuntarily." 42 U.S.C. 671 (a)(l5)(D).

7

judgment terminating the Parents' parental rights to G.K. and B.K and the certification that the G.K. and B.K. were freed for adoption.

*Condition 2: Prior attempts to rehabilitate the parents have been unsuccessful*

The Parents argue that DCFS did not prove by clear and convincing evidence that prior efforts to rehabilitate were unsuccessful. The Parents contend that the only evidence presented at the termination hearing was that the Parents lost their parental rights to G.K. and B.K. six years earlier. We disagree.

As DCFS points out, at the termination of parental rights trial in November 2023, the juvenile court took judicial notice—at DCFS' request—of the record of the prior case involving J.K., Jr.'s siblings. Moreover, the instant case involving J.K., Jr., was consolidated with the prior case, involving his siblings. In the prior case, J.K., Jr.'s two biological sisters, G.K. and B.K., were taken into the State's custody, in January 2015, after G.K. had been born drug exposed. G.K. and B.K., spent over two years in foster care while their Parents attempted to complete their respective case plans. The juvenile court judge in that case concluded that due to the Parents' substance abuse issues and periodic incarcerations, they failed to make substantial compliance with their case plans in order to reunify with their children. As a result, G.K. and B.K. were freed for adoption in 2017. Thus, the evidence in the record supports the juvenile court's finding that prior attempts to rehabilitate the Parents have been unsuccessful.

*Condition 3: The court has determined pursuant to Article 672.1 that current attempts to reunite the family are not required*

The Parents argue that the State failed to prove by clear and convincing evidence that DCFS did not need to make reasonable efforts of reunification. The Parents further argue that the juvenile court's ruling that reunification was not

required was based on the prior termination that occurred six years earlier and that there was no evidence of the Parents' current parental fitness for J.K., Jr.

In response, DCFS posits that the Parents were present and represented by counsel, who objected to the ruling, but did not apply for supervisory writ. DCFS contends that the issue is now *res judicata*[5] because the Parents failed to timely appeal or file an application for supervisory writ. We disagree.

In the case *sub judice*, the Parents took an appeal from the juvenile court's denial of their motion for relative placement. *See State in Interest of G.*, 23-0744, 384 So.3d 1039. We find that the Article 672.1 Motion is only a step in the process to secure termination of parental rights—thus, it is interlocutory in nature. Although DCFS suggests that *res judicata* applies to bar reconsideration of whether the juvenile court erred in granting the Article 672.1 Motion, we find that *res judicata* does not apply in this instance involving the separate issue of the termination of parental rights. *See Precept Credit Opportunities Fund, LP v. Dave*, 23-0104, p. 9 (La. App. 4 Cir. 10/3/23), 376 So.3d 210, 218 ("However, an appellate court may consider interlocutory judgments . . . as part of an unrestricted appeal from a final judgment." (quoting *Everett v. Air Products & Chemicals, Inc.*, 22-0539, pp. 6-7 (La. App. 4 Cir. 5/2/23), 382 So.3d 216, 223)).

Nevertheless, we conclude that the juvenile court did not err in finding that DCFS proved, by clear and convincing evidence, that current attempts at reunification were not required based on the facts of this case. "'Clear and convincing' evidence requires more than a 'preponderance,' but less than 'beyond a reasonable doubt.' Under the 'clear and convincing' standard, the existence of

---

[5] "The doctrine of *res judicata* precludes re-litigation of claims and issues arising out of the same factual circumstances when there is a valid final judgment." *Precept Credit Opportunities Fund, LP*, 23-0104, p. 18, 376 So.3d at 222.

9

the disputed fact must be highly probable or much more probable than its nonexistence." *State in Interest of A.L.D.*, 18-1271, pp. 4-5, 263 So.3d at 863 (quoting *In re L.M.M., Jr.*, 17-1988, p. 22 (La. 6/27/18), 319 So.3d 231, n.13). In its reasons for judgment, the juvenile court espoused:

> The attorneys for the child and DCFS proved all elements of 1015([3])(k) by clear and convincing evidence. As noted above, the Court previously held a hearing and determined that current attempts to reunify the child are not required. The State proved that the parents' rights to other siblings were previously terminated and prior rehabilitation efforts were unsuccessful. . . . The evidence was clear and convincing that termination of parental rights is in the best interest of the child.

We find no error in this ruling.

*Best interest of the child*

Next, having found that the juvenile court did not err in concluding that DCFS sufficiently proved the conditions enumerated in La. Ch.C. art. 1015(3)(k), we must now determine whether termination of the Parents' parental rights was in the best interest of J.K., Jr.

In finding that requirement met, the juvenile court, in its written reasons, observed:

> Before the child's third birthday, his father, [JK, Sr.], had to take him to the hospital because the child was experiencing seizure like symptoms. The child had to be intubated so that he could breathe. The hospital ran tests and found that the child had cocaine in his system. After DCFS notified both parents verbally and in writing that DCFS had received a report of alleged Life Threatening Injury/near Fatality and Drug/Alcohol Abuse, they removed the child from Children's Hospital. The [P]arents left the hospital before they could be served with an Instanter Order and relocated themselves and the child across the state line to Mississippi. Several months later both Parents and the child were located. The [P]arents were arrested and remain in jail awaiting trial. The child was finally delivered into the custody of the State. The State placed the child with foster parents, who had previously adopted his two sisters. The foster parents are also willing to adopt [J.K., Jr.] The DCFS worker testified that [J.K., Jr.] is doing well with is foster parents and that he is "very attached"

10

to them. She testified that they, "have gone [] above and beyond" and have taken the time out to do many assessments to get him to the level that he needs to be on."

We agree with the juvenile court's determination. Having considered all of these conditions, together with the best interest of the child, we find no error in the district court's judgment.

### Whether La. Ch.C. art. 1015(3)(k) is constitutional

The Parents contend that to terminate parental rights solely on a finding that a parent has previously had his or her parental rights terminated as to other children is unconstitutional. However, the Parents—as the juvenile court correctly found—failed to particularize the basis for their constitutional challenge. Thus, this constitutional issue is not properly before us.

Nonetheless, the juvenile court opted to address the constitutional issue, noting the significance of the issue as it involves "a child's and his parents' most fundamental rights." In so doing, the juvenile court, in its written reasons, observed:

> [T]he Louisiana Children's Code does not allow parental rights to be terminated solely because the [P]arents' parental rights have been previously terminated. In order for a court to terminate parental rights because the [P]arents have previously had their parental rights terminated, the Children's Code requires that a Court must also find that prior attempts to rehabilitate the parent have been unsuccessful and that the best interest of the child is served by severing parental rights La. Ch.C. Article[s] 1001[6], 1015([3])(k) and 1037[7]. (Emphasis in original).

---

[6] Louisiana Children's Code Article 1001 provides that "[i]n all proceedings, the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proved."

[7] Louisiana Children's Code Article 1037(B) currently provides as follow: (1) When the court finds that the alleged grounds set out in any Paragraph of Article 1015 or 1015.1 are proven by the evidentiary standards required by Article 1035 and that it is in the best interest of the child, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of the best interest of the child shall include consideration of the child's attachment to his current caretakers.

The juvenile court thus found the fast-track provisions, as outlined in La. Ch.C. arts. 672.1 and 1015(3)(k) are constitutional given that they must be applied in conjunction with other Children's Code provisions.

## DECREE

Based on the juvenile court's well-grounded written reasons coupled with the Parents' failure to properly particularize their constitutional challenge to the fast-track procedure, we affirm the juvenile court's decision to terminate the Parents' parental rights.

**AFFIRMED**